# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE: | C/A No. 22-00646-eg |
| | Chapter 7 |
| Lynette Marie Beavers, | **ORDER** |
| Debtor(s). | |

**THIS MATTER** came before the Court for hearing on August 23, 2022, to consider the Debtor's *Motion to Reinstate Case with Stay and to Vacate Court's July 25, 2022, Dismissal of Bankruptcy* filed on August 5, 2022 (the "Motion").[1] No objections to the Motion were filed, and the Debtor was the only party present at the hearing. After consideration of the record and the arguments made at the hearing, the Court grants the Motion to the extent of vacating the dismissal of the case, but further orders that the case be immediately closed as there are no further assets to administer at this time.

## PROCEDURAL BACKGROUND

On March 10, 2022, the Debtor filed for relief under Chapter 7 of the Bankruptcy Code, *pro se*. In the Voluntary Petition, at Part 2, Question 9, the Debtor indicated that she had previously filed for bankruptcy within the last eight years in the Northern District of Georgia, and at Question 11, she indicated that she rents her residence and that her landlord had not obtained an eviction judgment against her.[2] Janet B. Haigler was appointed as the chapter 7 trustee in the case (the "Chapter 7 Trustee").

The Debtor's schedules list assets with an aggregate value of $10,059,790.00 and liabilities of $152,530.28.[3] Among other things, in Schedule A/B, Part 4, Question 33,

---
[1] ECF No. 37.
[2] ECF No. 1.
[3] ECF Nos. 17 and 21.

1

which requires a debtor to list claims against third parties, the Debtor listed a claim of $5,000,000.00 against her estranged husband, Jack V. Beavers, for "division of [marital] estate," and at Part 5, Question 43, which requires a listing of "customer lists, mailing lists, or other compilations," the Debtor listed "Civil Rights Lawsuit Records & Archive Compilations by Anthony Reed" with a value of $5,000,000.00. The Statement of Financial Affairs at Part 4, Question 9, which requires the Debtor to list any lawsuits or proceedings that she is or was involved in within one year prior to her bankruptcy filing, did not list any actions or proceedings.[4]

As an addendum to her schedules, the Debtor included an explanation concerning her assets, indicating, in pertinent part:

> As a married couple, Jack Vinson Beavers and I own no significant marital property except for contingent and unliquidated civil rights claims against the Sheriff of and for Paulding County, the Department of Child & Family Services, and the State of Georgia, including but not limited to claims arising from false arrest, malicious prosecution and denial of child custody; the parties acquired personal property by rental and lease through the income and credit of Defendant Jack V. Beavers, which Jack V. Beavers should be ordered to pay and maintain for the benefit of his children. The parties have not agreed as to how the marital property shall be divided.
>
> However, I also, as an individual, have valuable claims against a number of my estranged husband Jack Vinson Beavers and his brother-in-law Anthony Reed.
> . . .
>
> Since I (apparently) cannot file for divorce or even "maintenance and support" under the laws of North or South Carolina before a year of separation, I wish to file such claims in Federal Court as arising under 28 U.S.C. § 1334. My estranged husband's default in his marital obligations are the SOLE reason for me to file bankruptcy at this time. I know I will not be entitled to a discharge without a special dispensation from the Court, but it is to collect what I am entitled to from Jack Vinson Beavers that is my main goal in this bankruptcy.

---

[4] ECF No. 28.

2

> Jack Vinson Beavers owes me and my daughters (and my grandson) support and I will ask the Chapter 7 Bankruptcy Trustee either to file suit to enforce these obligations here either in U.S. Bankruptcy or U.S. District Court or abandon those claims to me to file personally in one of those courts. . . .
> In addition to damages arising from breach of our Marital Contract, Jack Beavers owes me for multiple instances of tortious conduct. . . .[5]

On March 10, 2022, the Debtor filed an Application to Pay the Filing Fee in Installments, and on March 23, 2022, the Court entered an order granting the application and ordering the filing fee to be remitted in four payments.[6] On May 10, 2022, due to the Debtor's failure to pay the installments due, the Court entered an order requiring the Debtor to appear before the Court on June 13, 2022 to show cause why the case should not be dismissed.[7] Following the hearing, the Court entered an order requiring the Debtor to pay the remaining filing fee installments of $163.00 and the $32.00 fee for filing schedules adding creditors that were not listed at the time the petition was filed by July 1, 2022, and providing that failure to do so would result in the dismissal of the case without further notice or hearing.[8]

On March 11, 2022, the Court entered a notice on the docket that because the Debtor had previously received a chapter 7 discharge within the eight-year period preceding the filing of the current case in Case No. 19-40368 in the U.S. Bankruptcy Court for the Northern District of Georgia, the Debtor was not entitled to receive a discharge in this case.

On April 22, 2022, the Chapter 7 Trustee held the meeting of creditors pursuant to 11 U.S.C. § 341. On May 4, 2022, the Chapter 7 Trustee entered an Entry of Further Action

---

[5] ECF No. 21.
[6] ECF Nos. 5 and 15.
[7] ECF No. 27.
[8] ECF No. 33.

Required indicating she would hold the case open for 30 days to allow the Debtor to file the Statement of Financial Affairs which was past due, and to provide her with copies of the bank statements she had requested. Following a diligent inquiry into the financial affairs of the Debtor and the property belonging to the estate, on May 13, 2022, the Chapter 7 Trustee filed the Chapter 7 Trustee's Report of No Distribution concluding, among other things: "there is no property available for distribution from the estate over and above that exempted by law."[9] The Report of No Distribution further noted: "Pursuant to Fed. R. Bankr. P. 5009, I hereby certify that the estate of the above-named debtor(s) has been fully administered. I request that I be discharged from any further duties as trustee."

Due to the Debtor's failure to pay the $195.00 in outstanding fees as had been ordered, on July 25, 2022, the Court entered an order dismissing the case (the "Dismissal Order").[10] On August 5, 2022, the Debtor filed the Motion, seeking to vacate the Dismissal Order, reinstate her bankruptcy case, and reimpose the automatic stay. The Motion admits that the Debtor "goofed" in managing her funds but promised to become current on the outstanding payments. In support for the relief sought, the Debtor explained her need to "restore the automatic stay in order to preserve my equitable rights to pursue core and non-core claims outlined on my schedule [sic] Schedule B and supplements" and argued that the reinstatement of the automatic stay was necessary to preserve her residence as well as "keep[] or retak[e] certain marital property and recover funds owed to me for the benefit of my creditors and the estate, which in turn is basically the only way I can keep myself and my children and infant grandchildren off the streets." On August 12, 2022, the Debtor remitted all outstanding payments due to the Court.

---

[9] ECF No. 30.
[10] ECF No. 35.

The Court held a hearing on August 23, 2022, at which only the Debtor appeared. The Debtor explained that her husband of 18 years, the sole income provider, had abandoned the family, leaving her and the children with no money to support themselves. The Debtor stated that the main reason for filing bankruptcy was for the automatic stay to go into effect to stop any eviction proceedings by her landlord. She further indicated that the only legal action in which she is currently involved is a divorce proceeding that her estranged husband filed in Georgia.

### DISCUSSION AND CONCLUSIONS

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and this Court may enter a final order.

While the Motion does not cite any case law or statutory authority, it appears that the Debtor is seeking the Court's reconsideration of the Dismissal Order after curing the outstanding fee payments due to the Court. The Court, therefore, will apply the standards of Federal Rules of Civil Procedure 60(b), applicable to bankruptcy cases pursuant to Federal Rule of Bankruptcy Procedure 9024.[11] Pursuant to Rule 60(b), the Court may relieve a party from an order because, among other reasons, the "judgment has been satisfied, released, or discharged" or for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(5), (6). While the Debtor accepts sole responsibility for her failure to timely remit the fees due to the Court, she explained in the Motion and at the hearing that she has undergone various hardships including her estranged husband's abandonment of the family and failure to provide her or the children with financial support, and her inability to obtain

---

[11] In the Motion, the Debtor seeks the reinstatement or reopening of the case; however, because the case was never formally closed following the dismissal, the Court cannot consider the relief under 11 U.S.C. § 350.

5

public assistance. Eighteen days after the case was dismissed, the Debtor remitted the $195.00 due. The Court acknowledges that the Debtor had several opportunities to make the payments and failed to timely remit them, thus warranting the dismissal. Given the specific facts of this case, the arguments the Debtor made in Court, and that the primary ground for the Dismissal Order has been satisfied by the payment of the fees, the Court will set aside the Dismissal Order.

The Court, however, notes that the relief granted may not provide the full protection that the Debtor appears to seek in the Motion. Setting aside the Dismissal Order will not change the fact that the case has been fully administered and is ripe to be closed.

In a chapter 7 case, upon the filing of a petition, all pre-petition property and interests become property of the estate to be administered by the chapter 7 trustee. 11 U.S.C. §§ 541, 704. To the extent there are valuable assets to administer, the primary role of the chapter 7 trustee is to "collect and reduce to money the property of the estate . . . as expeditiously as is compatible with the best interests of parties in interest." 11 U.S.C. § 704(a)(1). Subsequently, to the extent that assets are liquidated, the trustee distributes the money in accordance with the chapter 7 distribution scheme set forth in 11 U.S.C. § 726. Once the distribution is complete and the case is fully administered, the case is closed. 11 U.S.C. § 350(a). Property that a debtor properly scheduled under § 521(a)(1) but was not administered by the time the case is closed, is deemed abandoned to the debtor. 11 U.S.C. § 554(c). *See also In re Ingram*, 531 B.R. 121 (Bankr. D.S.C. 2015). Property of the estate that is not abandoned and that is not administered in the case remains property of the estate. 11 U.S.C. § 554(d). Stated differently:

> [U]nless the court orders otherwise, the language of subsection (c) deems abandoned to the debtor any scheduled property of the estate that is

6

>unadministered at the close of the case. Normally, if property has been scheduled accurately, it is the trustee's duty to investigate whether the property has value to the estate and decide before the case is closed whether to administer property.

5 Collier on Bankruptcy ¶ 554.02[7] (16th ed.). Conversely, because "[a]bandonment presupposes knowledge," if property was not properly scheduled by the debtor, it would not automatically be deemed abandoned at the end of the case. *Id.* at ¶ 554.03.[12]

With respect to the application of the automatic stay, 11 U.S.C. § 362(c) provides:

(1) The stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate;

(2) The stay of any other act under subsection (a) of this section continues until the earliest of—

   (A) The time the case is closed;

   (B) The time the case is dismissed; or

   (C) If the case is a case under chapter 7 of this title concerning an individual or a case under chapter 9, 11, 12, or 13 of this title, the time a discharge is granted or denied[.]

Accordingly, if a chapter 7 trustee files a report of no distribution and abandons estate assets back to the debtor, the automatic stay would no longer be in effect by the time the case is closed, at the latest.[13]

In the Motion, the Debtor claims that the relief should be granted because she needs to file lawsuits against various parties as mentioned in the addendums filed with her

---

[12] When a debtor fails to properly schedule an asset, including a cause of action or claim against a third party, the asset remains property of the estate, therefore precluding the debtor from pursuing the claim on his or her own behalf. *See In re Velez*, 604 B.R. 438 (Bankr. S.D.N.Y. 2019). In addition to the fact that such an asset belongs to the estate, the doctrine of judicial estoppel will often prevent the assertion of the claim by the debtor, with some exceptions. *Slater v. United States Steel Corp.*, 871 F.3d 1174 (11th Cir. 2017).

[13] Pursuant to Federal Rule of Bankruptcy Procedure 5009, once the trustee files a final report and has certified that the estate has been fully administered, a party in interest or the United States Trustee has 30 days to file an objection, and if no objection is filed, there is a presumption that the estate has been fully administered and the Court will close the case. Fed. R. Bankr. P. 5009(a); 11 U.S.C. § 350(a).

schedules and argues it would be unjust and unfair to prevent her from filing any such claims on grounds of judicial estoppel. To the extent that causes of action or claims against third parties were properly and fully disclosed in Debtor's schedules,[14] the Chapter 7 Trustee made a diligent inquiry into the assets available to the estate and concluded that she would not pursue any of the claims that were scheduled and that no assets were available for distribution, as reflected in her Report of No Distribution. Accordingly, as the case has been fully administered and is ripe for closure, all such assets would revert to the Debtor upon the closing of the case, and the automatic stay would no longer be in effect. Many of the causes of action or proceedings that the Debtor seeks to pursue appear to be related to family court or state court matters and should be commenced in the proper forum. The closing of the bankruptcy case would not prevent her from doing so.

Based on the foregoing analysis, the Motion is granted. The Dismissal Order is hereby vacated. Upon the entry of this Order and the Dismissal Order being vacated, the Clerk's Office is hereby directed to promptly close the case.

**AND IT IS SO ORDERED.**

**FILED BY THE COURT**
**08/24/2022**



Entered: 08/24/2022

Elisabetta G. M. Gasparini
US Bankruptcy Judge
District of South Carolina

---

[14] To be clear, the Court makes no finding about what causes of action or claims were properly and fully disclosed in the schedules. The schedules listed various potential claims against various parties. At the hearing, the debtor indicated that she had not commenced any such action against any of the parties, but that her estranged husband had commenced a divorce proceeding against her in Georgia.